**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**PATRICIA ANN JAMES**                                                          **PLAINTIFF**

**vs.**                                          **CIVIL ACTION NO. 1:11-CV-00015-SAA**

**COMMISSIONER OF SSA**                                             **DEFENDANT**

**MEMORANDUM OPINION**

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Patricia Ann James for disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act. Plaintiff protectively filed applications for SSI and DIB on October 1, 2008, alleging disability beginning on February 18, 2007. Docket 9, p. 137 - 141. Plaintiff's claim was denied initially and on reconsideration. Docket 9, p. 68- 71. She filed a request for hearing (Docket 9, p. 91) and was represented by an attorney at the administrative hearing on July 21, 2010. Docket 9, p. 34- 66. The Administrative Law Judge (ALJ) issued an unfavorable decision on September 23, 2010 (Docket 9, p. 13- 28), and the Appeals Council denied plaintiff's request for a review. Docket 9, p. 73- 78. Plaintiff filed the instant appeal from the ALJ's most recent decision, and it is now ripe for review. Because both parties have consented to have a magistrate judge conduct all the proceedings in this case under 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

I. FACTS

Plaintiff was born on August 21, 1961 and was 46 years old at the alleged onset of her

disability. Docket 9, p. 40. She completed the twelfth grade and previously worked as an electrician. Docket 9, p. 177, 181. Plaintiff claimed disability beginning February 18, 2007 due to "right leg problems, nerves, back problems, panic attack, injury from auto accident." Docket 9, p. 176.

The ALJ determined that plaintiff's degenerative disc disease of the back, hypertension, chronic pain in legs, knees and feet, right leg and ankle injury, post traumatic stress disorder (PTSD), depression, anxiety, nerves/panic attacks and mood disorder associated with physical condition constituted "severe" impairments but that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). Docket 9, p. 15- 20. The ALJ found that the plaintiff's physical impairments did not satisfy Listings 1.02, 1.03, 1.04, 1.05, 1.06 or 1.07. Docket 9, p. 18. In evaluating the plaintiff's mental impairments, she found that Listings 12.04 and 12.06 were not met, specifically that the "paragraph B" criteria were not satisfied because the plaintiff experienced only "mild" restrictions in the activities of daily living, "moderate" difficulties in social functioning and in maintaining concentration, persistence or pace and one to two episodes of decompensation, each of extended duration, with only one of those episodes documented in the record.[1] Docket 9, p. 18- 20.

Considering the entire record, the ALJ concluded that the plaintiff retained the Residual Functional Capacity (RFC) to

> occasionally lift and or carry 50 pounds and frequently lift and or carry 25

---

[1]Additionally, the ALJ considered the "paragraph C" criteria and found "no evidence indicating a complete inability to function independently outside of the area of the claimant's home." Docket 9, p. 19.

> pounds. She retains the ability to stand/walk 6 hours in an 8-hour workday. She can occasionally perform climbing activities. She can perform routine simple repetitive work or tasks. She can concentrate up to 2 hours at a time. She can perform work requiring occasional interaction with coworkers and occasional contact with the public.

Docket 9, p. 20. The ALJ found that the objective medical evidence did not support the severity of her alleged symptoms and limitations and that her testimony was "unpersuasive and quite vague and generally, lacking the specificity which might otherwise make it more convincing." Docket 9, p. 24.

Based on testimony of a vocational expert [VE], the ALJ held that plaintiff's "severe" impairments prevent her from performing her past relevant work as an electrician[2] (Docket 9, p. 26) but, with the limitations set out by the ALJ in her hypothetical, she could perform unskilled jobs performed at the medium level of exertion such as a kitchen helper, cleaner and hand packager. Docket 9, p. 27. As a result, the ALJ concluded that plaintiff has transferable work skills and is not disabled under the Social Security Act. Docket 9, p. 27.

The plaintiff claims that the ALJ erred in failing to consider the opinion of any mental health expert, resulting in a decision that is not supported by the evidence. Docket 15, p. 7- 10. The plaintiff does not allege any error by the ALJ involving her physical limitations.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step

---

[2]The ALJ noted that according to the Dictionary of Occupational Titles, the job of electrician is semiskilled work performed at the light exertional level, although the plaintiff's description of her job duties indicated that she performed at the medium exertional level. Docket 9, p. 26.

sequential evaluation process.[3] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[4] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[5] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[6] At step three, the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[7] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[8] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[9] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she

---

[3]*See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[4]*Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[5]20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[6]20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

[7]20 C.F.R. §§ 404.1520(d), 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[8]20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

[9]20 C.F.R §§ 404.1520(g), 416.920(g) (2010).

cannot, in fact, perform that work.[10]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). It is the court's responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the Commissioner applied the proper legal standards in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[11] even if it finds that the evidence leans against the Commissioner's decision.[12] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The proper inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed."

---

[10]*Muse*, 925 F.2d at 789.

[11]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[12]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

*Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

The plaintiff has not engaged in substantial gainful activity since February 18, 2007, satisfying step one. Docket 9, p. 137, 140. At step two, the ALJ found that plaintiff's impairments (degenerative disc disease of the back, hypertension, chronic pain in legs, knees and feet, right leg and ankle injury, PTSD, depression, anxiety, nerves/panic attacks and mood disorder) were severe but determined at step three that the impairments did not meet the stringent requirements set out in the listings,[13] specifically that the plaintiff's mental impairments did not meet or medically equal the criteria under Listings 12.04 or 12.06 of 20 C.F.R. Part 404, Subpart P, App. 1. Docket 9, p. 18- 20.

Regarding her credibility, the ALJ found that the symptoms and limitations claimed by the plaintiff were not supported by the objective medical evidence. He noted conservative treatment consisting mainly of medication refills [Docket 9, p. 21- 22], inconsistencies in her testimony,[14] no pain or discomfort while testifying and "no unusual behavior or mannerisms." Docket 9, p. 23. After considering the entire record, the ALJ found that plaintiff has the RFC to

---

[13] At step three of the sequential evaluation process, plaintiff must prove by objective medical evidence that her impairment, either singly or in combination with other impairments, meets the stringent requirements set out in the listings. *Selders v. Sullivan*, 914 F.2d 614, 617, 619 (5th Cir. 1990), citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990) (claimant bears the burden of proof to show medical findings that she meets each element of the listing).

[14] The ALJ noted inconsistent statements involving alcohol and drug use, inconsistent statements of why she stopped working, a report from a family member that she was selling her medications and inconsistent statements involving her living arrangements. Docket 9, p. 24- 25.

perform work functions which are mentally limited to routine simple repetitive work or tasks, concentration of only 2 hours at a time, and only occasional interaction with co-workers and the public. Docket 9, p. 20. Based on the RFC and the VE's testimony, the ALJ found at step four in the sequential evaluation process that plaintiff could not return to her past work (Docket 9, p. 26), but she concluded at step five that plaintiff is capable of performing other work and is therefore not disabled. Docket 9, p. 27.

The plaintiff argues that the ALJ erred in determining the severity of the plaintiff's mental impairment at step three because the ALJ did not afford any weight to any mental health expert. Docket 15, p. 7- 10. Under Listing 12.04, the required level of severity is met when (1) paragraph A and paragraph B requirements are satisfied or (2) when paragraph C requirements are met. Therefore, under paragraphs A and B, the plaintiff must demonstrate that she has *both* medically documented affective disorder, AND she must demonstrate two of the following:

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration . . . .

Alternatively, under paragraph C, she must demonstrate "a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support," and, in relevant part, "[r]epeated episodes of decompensation, each of extended duration..." 20 C.F.R. Part 404, Subpart P, App. 1, Listing 12.04.

The record reflects that by May 2007, the plaintiff was being treated for anxiety and depression by her primary care physician, Dr. Senter (Docket 9, p. 399, Docket 15, p. 2), and she

7

continued to seek treatment, mainly in the form of medication refills, from Dr. Senter until March 2010. Docket 9, p. 380- 399. Additionally, the plaintiff was prescribed medication for depression and anxiety by Dr. Howell at Tishomingo Medical Center beginning in October 2008 after the death of her son and continuing until March 2010.[15] Docket 9, p. 339- 346. Although the ALJ afforded "some weight" to the plaintiff's treating physicians, she noted that they did not make any "objective medical findings that support a finding of disability or the severity of physical symptoms." Docket 9, p. 25.

On October 1, 2008, plaintiff filed for disability benefits beginning on the date she was last employed, February 18, 2007. The ALJ noted that the plaintiff inconsistently reported why she stopped working, almost two years before the death of her son, and that she did not seek less demanding work. Docket 9, p. 24.

Dr. Alexander conducted a comprehensive mental status evaluation on April 21, 2009 and diagnosed the plaintiff with PTSD, depression with psychotic features, possible bipolar disorder and likely mixed personality disorder. Docket 9, p. 352- 357. The ALJ considered Dr. Alexander's opinion and noted that he "objectively found that the claimant's mental impairments and symptoms were triggered by the unfortunate death of her son in October 2008, rather than any ingrained psychological or psychiatric impairment" (Docket 9, p. 22), but the ALJ afforded his impressions "little weight" because he did not make findings of her activities of daily living, social function and concentration, persistence or pace. Docket 9, p. 25. Similarly, the ALJ

---

[15] The record contains medical records from Tishomingo Medical Center beginning January 2002; however, medication for depression does not appear to have been prescribed until October 2008 after the death of her son. Before March 2009, the plaintiff was prescribed medication for shoulder and back pain. Docket 9, p. 300- 346, 404- 415.

8

discounted the opinion of consulting, non-examining physician, Dr. Amy Morgan, because her opinions were "not completely supported by the medical evidence of record" and did not include a review of the most recent mental consultative mental exam and treatment. Docket 9, p. 25. Dr. Morgan's "Psychiatric Review Technique" reported that plaintiff had non-severe anxiety related disorders resulting in "mild" restrictions in daily living, difficulties maintaining social functioning and difficulties in maintaining concentration, persistence, or pace and that plaintiff had experienced one or two episodes of decompensation. Docket 9, 358- 371. She further reported that the plaintiff was capable of engaging in routine, repetitive work activity. Docket 9, p. 370.

The ALJ assigned greater limitations to the plaintiff's mental abilities than the limitations assigned by Dr. Morgan – "moderate" rather than "mild" difficulties in social functioning and in maintaining concentration, persistence or pace – but seemingly not as great as the limitations assigned by Dr. Small. Dr. Small evaluated the plaintiff on August 11, 2010, after the hearing before the ALJ and after the plaintiff was treated for depression at North Mississippi Medical Center Behavioral Health Center.[16] Dr. Small diagnosed the plaintiff with "post-traumatic stress disorder, rule out grief reaction" and "mood disorder associated with general physical condition" Docket 9, p. 446. He found "fair" ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, follow detailed but not complex job instructions and simple job instructions, maintain personal appearance, behave in an

---

[16]The plaintiff was admitted to North Mississippi Medical Center Behavioral Health Center on March 26, 2010 with a GAF score of 30 and dismissed on April 5, 2010 with a GAF score of 50-55. She was diagnosed with a major depressive episode, post traumatic stress disorder, grief, cannabis and alcohol abuse. Docket 9, p. 420.

emotionally stable manner and relate predictably in social situations. Docket 9, p. 448- 450. "Fair" was defined as limited but satisfactory. *Id.* Dr. Small found "poor" ability to deal with work stresses, function independently, maintain attention/ concentration, follow complex job instructions and demonstrate reliability. *Id.* "Poor" is defined as seriously limited but not precluded. *Id.* The ALJ afforded "some weight" to Dr. Small's evaluation of the plaintiff but "little weight" to his assessment of ability to perform work-related activities" because it was "fairly inconsistent with his evaluation and opinion that the claimant only demonstrated a 'mild level of anxiety and depressed mood.'" Docket 9, p. 25.

The plaintiff claims that the ALJ did not give any weight to any mental health expert and, instead, "decided to interject her own medical opinion." Docket 9, p. 10. The Commissioner responds that the ALJ properly considered the opinions of consultative examiners Dr. Morgan and Dr. Small, that both opinions support the ALJ's finding that the plaintiff was not disabled [Docket 16, p. 8-9], and that the ALJ properly discounted Dr. Small's assessment of the plaintiff's ability to do work-related activities. Docket 16, p. 9- 10.

It is clear that the ALJ reviewed the entire record, identified the relevant listed impairments, discussed the evidence that was contained in the record and concluded that the balance tipped toward functional ability as required in determining whether the plaintiff's impairments met or equaled a Listing Impairment. *Burnett v. Commissioner of Social Sec.*, 220 F.3d 112, 119-20 (3rd Cir. 2000). The ALJ performed a thorough analysis of the plaintiff's depression and anxiety and clearly considered the treatment records of the plaintiff's treating physicians, Dr. Senter and Dr. Howell, and her inpatient counseling at Behavioral Health. Having reviewed the opinions of Dr. Alexander and Dr. Morgan, she decided that an additional

mental medical source opinion was required.  She subsequently considered Dr. Small's report, and although she discounted his assessment of the plaintiff's ability to do work-related activities, her assignment of "moderate" severity to difficulties in social functioning and difficulties in maintaining concentration, persistence or pace does not directly conflict with Dr. Small's findings.  Further, the plaintiff did not provide any evidence, other than her testimony, that depression or anxiety affect her ability to work, and the ALJ adequately explained her reasons for questioning the plaintiff's credibility.

Consequently, the undersigned finds that the record did not support a finding of disabled under the Act.  The plaintiff certainly could have provided a mental medical source statement from a treating physician, or other mental health expert, to refute any consulting doctor's findings;  the absence of such an opinion does not support the plaintiff's contention that the ALJ substituted her judgment for that of a medical expert.  The record contained, and the ALJ demonstrated, adequate evidence to ensure that the ALJ's decision was "an informed decision based upon sufficient facts."  *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).  Therefore, the ALJ's opinion was supported by substantial evidence and must be affirmed.  A separate judgment in accordance with this Memorandum Opinion will issue this date.

This, the 1st day of November, 2011.

                                           /s/ S. Allan Alexander
                                           UNITED STATES MAGISTRATE JUDGE